Filed 10/8/13  E.M. v. K.H. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| E. M.,<br><br>        Respondent,<br><br>v.<br><br>K. H.,<br><br>        Appellant. | D063136<br><br><br><br>(Super. Ct. No. DN169801) |

APPEAL from an order of the Superior Court of San Diego County, David G. Brown, Judge.  Affirmed.

Law Offices of Thomas D. Allison and Thomas D. Allison for Appellant.

Marcus Family Law Center, Erin K. Tomlinson and Ethan J. Marcus for Respondent.

K. H. (Mother) appeals an order awarding E. M. (Father) temporary legal custody and primary physical custody of their daughter.[1]  Mother contends the trial court erred by: (1) imposing the burdens of proof and persuasion on her; (2) disregarding her evidence; and (3) finding it was in the best interests of their daughter for Father to have primary physical custody of her.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were married in 2005.  Their daughter was born later that year.  In 2007, a judgment of nullity of their marriage (Judgment) was entered by the Santa Cruz County Superior Court based on the parties' stipulation citing a bigamous marriage.  The Judgment awarded Mother legal and physical custody of their daughter, with Father to have a reasonable right of visitation.

In 2008, Father began to exercise his right of visitation more regularly, taking their daughter on alternate weekends through the spring of 2011.  In 2011, Mother did not have a place to live.  On June 30, 2011, Mother and Father agreed that their daughter would live at Father's home through the summer and the following school year so she could have some stability.  On July 4, their daughter moved in with Father, who lives with his mother.  In late August, their daughter began attending first grade at a San Marcos elementary school.  In September, Mother stated she wanted their daughter back.

---

[1]     Because this appeal arises out of a parentage action and all court filings are deemed confidential to protect the privacy of the child, we use only the initials of the parents' names.  (Cf. *Robert J. v. Catherine D.* (2009) 171 Cal.App.4th 1500, 1504.)

In November 2011, Father filed an order to show cause (OSC) in the Santa Cruz County Superior Court, requesting the Judgment be modified to provide that he have legal and physical custody of their daughter, and for transfer of venue to San Diego County Superior Court. Father also requested an order granting him temporary custody of their daughter pending a hearing on the OSC. The court denied his request for a temporary custody order pending the hearing. The next day, Mother informed Father during her weekend visitation that she would be keeping their daughter. The court denied Father's two subsequent requests for a temporary custody order. Mother refused Father's request that his subsequent visits with their daughter be unsupervised. In February 2012, the Santa Cruz County Superior Court granted Father's motion to transfer venue of the case to San Diego County Superior Court.

Later that month, Father filed a petition to establish parental relationship in the San Diego County Superior Court, requesting that he be awarded legal and physical custody of their daughter and Mother be granted reasonable visitation. Father subsequently filed an OSC requesting an order modifying the Judgment's custody and visitation provisions. On February 16, the trial court issued an order directing Mother to return their daughter to Father pending the hearing on Father's petition, directing that the daughter be re-enrolled in the San Marcos school, a custodial evaluation be conducted, and Mother's visitation with their daughter be limited to six hours on weekends with Father's mother to supervise the visits.

3

In March 2012, Mother filed an OSC, requesting that she be awarded legal and physical custody of their daughter. During that month, the parties participated in a family court services (FCS) conference.

In June 2012, an evidentiary hearing was conducted during which the court heard the testimony of six witnesses, including Mother and Father, and received other evidence presented by the parties. On September 28, 2012, the trial court issued written findings and an order (Order) awarding Father temporary legal custody and primary physical custody of their daughter and granting Mother supervised visitation on alternate weekends. Mother timely filed a notice of appeal challenging the Order.

## DISCUSSION

### I

### *Standard of Review*

"Under California's statutory scheme governing child custody and visitation determinations, the overarching concern is the best interest of the child. The court and the family have 'the widest discretion to choose a parenting plan that is in the best interest of the child.' (Fam. Code, § 3040, subd. (b).) When determining the best interest of the child, relevant factors include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, and the nature and amount of contact with the parents." (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255, fn. omitted (*Montenegro*).) Child custody and visitation orders are reviewed on appeal for abuse of discretion. (*Ibid*.) "The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child. We are

4

required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 (*Burgess*).)

"[O]nce a final judicial custody determination is in place[,] [u]nder the so-called changed circumstance rule, a party seeking to modify a permanent custody order can do so only if he or she demonstrates a significant change of circumstances justifying a modification." (*Montenegro*, *supra*, 26 Cal.4th at p. 256.) "The changed-circumstance rule is not a different test, devised to supplant the statutory test, but an adjunct to the best-interest test. It provides, in essence, that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest[s]. The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements." (*Burchard v. Garay* (1986) 42 Cal.3d 531, 535.) In *Burgess*, the California Supreme Court "confirmed that the changed circumstance rule applied after any final 'judicial custody determination.' " (*Montenegro*, at p. 257.) However, *Montenegro* broadly interpreted the term "judicial" regarding a final custody determination, stating: "[W]e see no basis for treating a permanent custody order obtained via stipulation any differently from a permanent custody order obtained via litigation." (*Id*. at p. 257.) Nevertheless, *Montenegro* concluded an initial custody determination must be intended by the stipulating parents to be permanent or final for the changed circumstance test to apply thereafter:

5

"Although we conclude that stipulated custody orders *may* be final judicial custody determinations for purposes of the changed circumstance rule, we also recognize that many stipulated custody orders are not intended to be final judgments. Child custody proceedings usually involve fluid factual circumstances, which often result in disputes that must be resolved before any final resolution can be reached. Although the parties typically resolve these disputes through stipulations confirmed by court order, they often do not intend for these stipulations to be permanent custody orders. Indeed, these temporary custody orders serve an important role in child custody proceedings, and our statutory scheme expressly provides for them. (See, e.g., [Fam. Code,] § 3061.) Because many parties would not enter into a stipulated custody order if a court might later treat that order as a final judicial custody determination, we must be careful in construing such orders. Otherwise, we may discourage these parties from entering into such stipulations.

"With this in mind, we hold that a stipulated custody order is a final judicial custody determination for purposes of the changed circumstance rule only if there is a clear, affirmative indication the parties intended such a result. . . . Because most trial courts ' " 'rubber stamp' " ' stipulations in custody proceedings [citation], our holding ensures that courts effectuate the *actual* intent of the parties when they entered into the stipulation without precluding them from making enforceable promises [citation]." (*Montenegro*, *supra*, 26 Cal.4th at p. 258.)

Generally, a trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child. (*In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 610; *Burgess*, *supra*, 13 Cal.4th at p. 32.) However, "all exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." (*People v. Russel* (1968) 69 Cal.2d 187, 195, superseded by statute on another ground as noted in *People v. Anderson* (2001) 25 Cal.4th 543, 575; see also *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977.) Therefore, a discretionary

6

decision may be reversed if improper criteria were applied or incorrect legal assumptions were made. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435-436.) Therefore, a discretionary order based on the application of improper criteria or incorrect legal assumptions is *not* an exercise of *informed* discretion and is subject to reversal even though there may be substantial evidence to support that order. (*Linder*, at p. 436; *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 655.) If the record *affirmatively* shows the trial court misunderstood the proper scope of its discretion, remand to the trial court is required to permit that court to exercise *informed* discretion with awareness of the full scope of its discretion and applicable law. (*People v. Rodriguez* (1998) 17 Cal.4th 253, 257, superseded by statute on another ground as noted in *People v. Luna* (2003) 113 Cal.App.4th 395, 397; *People v. Fuhrman* (1997) 16 Cal.4th 930, 944.) The appellant bears the burden of showing that a trial court abused its discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## II

### *Burdens of Proof and Persuasion*

Mother contends the trial court erred by imposing on her, rather than Father, the burdens of proof and persuasion to show it was in their daughter's best interests for her (Mother) to have primary physical custody of their daughter.

### A

Based on the parties' stipulation, the Judgment was entered in 2007, giving Mother legal and physical custody of their daughter, with Father to have a reasonable right of visitation. In November 2011, Father filed an OSC requesting the Judgment be modified

7

to provide that he have legal and physical custody of their daughter. In February 2012, after the case was transferred to San Diego County Superior Court, Father filed a petition to establish parental relationship, requesting that he be awarded legal and physical custody of their daughter and Mother be granted reasonable visitation. Father subsequently filed an OSC requesting an order modifying the Judgment's custody and visitation provisions. The trial court issued an order directing Mother to return their daughter to Father pending the hearing on Father's petition. In March 2012, Mother filed an OSC requesting that she be awarded legal and physical custody of their daughter.

In June 2012, at the beginning of the evidentiary hearing, the trial court stated: "[B]oth parties are more or less moving parties, but we'll just proceed with petitioner's [i.e., Father's] case first." Father then presented his case-in-chief in support of his petition. In August 2012, the court heard counsel's closing arguments. At the beginning, the court stated: "[S]ince you [presumably Father's counsel] are the defender of the status quo, let's allow [Mother's counsel to argue first]." The court subsequently issued the Order, awarding Father temporary legal custody and primary physical custody of their daughter and granting Mother supervised visitation on alternate weekends.

B

Mother asserts the trial court erred by imposing on her the burdens of proof and persuasion to show that it was in their daughter's best interests for her (Mother) to have primary physical custody. Mother does not attempt to differentiate between the burdens of proof and persuasion. For purposes of this opinion, we consider them to be one and the same; however, the record does not support her assertion. Mother cites only one

8

excerpt from the reporter's transcript before closing arguments were presented. She notes the court stated that her counsel should argue first because Father was defending the status quo. However, the fact the court selected one of the parties to argue first does not show it placed the burden of proof or persuasion on that party. Rather, in the circumstances of this case, the court had to allow one of the parties to argue first and, in so doing, did not impose the burden of proof or persuasion on that party. We presume the trial court considered all of the evidence admitted at the hearing, together with the parties' arguments, in determining what legal and physical custody arrangements were in their daughter's best interests. In making that determination, the court cited relevant statutory and case law and therefore presumably was cognizant of, and followed, applicable law. We conclude the court did not place the burdens of proof and persuasion on Mother (or Father) and therefore did not err as Mother asserts. Mother does not cite anything in the record on appeal affirmatively showing the trial court imposed those burdens on her. Absent that showing, we presume the court acted properly and did not impose any burden of proof or persuasion on either party. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) At most, the record shows the court considered both parties to be "moving parties," presumably based on the fact that Father filed a petition to establish parental relationship requesting that he be awarded legal and physical custody of their daughter, and Mother filed an OSC requesting that she be awarded legal and physical custody. Based on the record, we presume the trial court did not impose the burden of proof or persuasion on either party. We are not persuaded by Mother's assertion that the court erred by placing those burdens on her.

9

Nevertheless, assuming arguendo the court did, in fact, place the burdens of proof and persuasion on Mother, we conclude it did not prejudicially err by doing so. At the time of the trial court's August 2012 statement that Father was defending the status quo, Father had physical custody of their daughter for the past year, with the exception of a few months (November 2011 through February 2012) when Mother improperly withheld custody from him. Therefore, at the time of the evidentiary hearing and closing arguments, Father had custody of their daughter for a significant period of time. The California Supreme Court stated: "[I]n view of the child's interest in stable custodial and emotional ties, custody lawfully acquired and maintained for a significant period will have the effect of compelling the noncustodial parent to assume the burden of persuading the trier of fact that a change [in custody] is in the child's best interest." (*Burchard v. Garay*, *supra*, 42 Cal.3d at p. 536.) The trial court in this case could have reasonably concluded that Father's custody of their daughter was for a significant period under *Burchard* and therefore Mother had the burden of persuasion to show that a change in that custody was in their daughter's best interests.[2] (*Burchard v. Garay, supra,* 42 Cal.3d

_____

[2]     To the extent Mother asserts the trial court erred by not requiring proof of changed circumstances since the Judgment, she has not carried her burden on appeal to persuade us that the Judgment's custody and visitation provisions were intended by the parties to be a final judicial determination of those issues. Alternatively stated, absent "a clear, affirmative indication the parties intended such a result," courts will conclude stipulated provisions are not intended to be final or permanent judicial determinations of child custody and visitation issues. (*Montenegro*, *supra*, 26 Cal.4th at p. 258.) Because there is no such affirmative indication in this case, neither party had any burden to show changed circumstances since the Judgment. The trial court was charged with making a de novo determination of the child custody and visitation issues based on the evidence presented in this case.

10

at p. 536.)  The court could reasonably so conclude even though Mother had physical custody of their daughter for an extended time prior to Father's significant period of physical custody.  We conclude the court did not err in placing the burdens of proof and persuasion on Mother.  Even had the court so erred, Mother does not carry her burden on appeal to show the error was prejudicial (i.e., absent the error it is reasonably probable that the court would have reached a result more favorable to her).

III

*Disregarded Evidence*

Mother contends the trial court erred by disregarding some of her evidence.  On June 16, 2012, at the end of the evidentiary hearing, the court, in effect, overruled Father's objections to certain declarations presented by Mother, stating:

> "I understand [Father's counsel's] objections under the local rules of court.  I understand his objections under the Rules of Evidence as to [Mother's] Exhibits A through H.  I understand it.  I appreciate his objections.  *I am going to consider those declarations* out of fairness, given the limited time in which we had to deal with this issue."  (Italics added.)

Despite that statement, Mother argues the court did not consider those declarations, citing the following provision in the Order:

> "On August 8, 2012, after the matter was argued and submitted, the parties filed a stipulation regarding the 'evidence before the court.' [Citation.]  The parties are advised the court is considering only the evidence properly before the court at the time the matter was argued and submitted.  The court will not consider any exhibits offered regardless of the above stipulation subsequent to the submission of the matter to the court."

11

We do *not* read that provision in the Order as meaning the trial court did not consider the declarations Mother presented at the evidentiary hearing that it stated it would consider. Rather, we read the Order as ruling that the court would not be bound by the parties' postevidentiary hearing stipulation and would, instead, base its decision on that evidence presented to the court during the evidentiary hearing and before the matter was submitted. We conclude the trial court considered Mother's declarations, along with all of the other evidence presented at the evidentiary hearing, in determining the best interests of the parties' daughter.

IV

*Daughter's Best Interests*

Mother contends the trial court erred by concluding it was in their daughter's best interests for Father to have primary physical custody of her. She argues the court failed to properly consider the FCS mediator's recommendation and the results of the child welfare services (CWS) investigation regarding her purported abuse of their daughter.

However, in so arguing, Mother does not show the trial court excluded that evidence at the hearing or that it rejected it as inherently incredible in determining the best interests of the parties' daughter. Rather, Mother merely appears to argue, in effect, the court did not give that evidence the proper weight or draw the inferences from it that would have been favorable to her case. In so doing, she misconstrues and/or misapplies the applicable standard of review. In determining whether a trial court abused its discretion in determining a child's best interests, we examine the record to determine if there is no reasonable basis on which the court could conclude its decision advanced the

12

best interests of the child. (*Burgess*, *supra*, 13 Cal.4th at p. 32.) If there is substantial evidence to support the court's finding regarding a child's best interests and the court reasonably applies the proper legal standards to the evidence, there is no abuse of discretion. (*Ibid.*; *People v. Russel*, *supra*, 69 Cal.2d at p. 195; *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [substantial evidence standard of review applies to trial court's resolution of disputed factual issues].)

In this case, we conclude the trial court did not abuse its discretion. There is no affirmative showing on the record that the court misunderstood the applicable legal standards, and there is substantial evidence to support its finding regarding the best interests of the parties' daughter. Father presented evidence showing that the best interests of their daughter would be for him to have primary physical custody of her. Father presented evidence from which the court could reasonably infer their daughter was provided with a more stable living environment in Father's, rather than Mother's, custody. Furthermore, he presented evidence showing their daughter flourished in her school environment while in Father's custody. The court could reasonably conclude the health and welfare of the parties' daughter was best served in Father's custody.

Father also presented evidence showing he, rather than Mother, was the parent more likely to facilitate, foster, and encourage visitation by the noncustodial parent. Without restating the specifics of the evidence presented during the hearing, the court could reasonably infer that Mother had in the past occasionally interfered with or prevented Father's visits with their daughter (especially from November 2011 through February 2012) and posted negative comments regarding Father on Facebook. During

13

Father's visitation, Mother often spoke with their daughter only in Chinese, apparently to prevent him from understanding the nature and content of their conversations. Mother also apparently coached their daughter regarding her (daughter's) parental preferences and where she wanted to live. Father also presented evidence showing he provided all transportation for Mother to have visitation with their daughter during the periods he had custody of her.

Finally, Father presented evidence that Mother committed physical abuse against their daughter. Mother admitted slapping their daughter's face and that her nose bled thereafter. Despite CWS's finding that a report of that suspected abuse was unsubstantiated, the court could, and did, make its own finding and concluded Mother did, in fact, commit an act of physical abuse against their daughter.[3] Contrary to Mother's assertion, the evidence showing the FCS mediator (Carrie Eckhart) recommended that Mother have primary physical custody did not create any presumption to be rebutted by Father, much less require the court to follow that recommendation. Rather, the court properly considered the FCS mediator's recommendation, along with all of the other evidence, in determining the best interests of the parties' daughter. (*In re Marriage of Rosson* (1986) 178 Cal.App.3d 1094, 1101 [it is the court, not the mediator, that bears responsibility to decide custody].) Likewise, contrary to Mother's assertion, the record does not show the court entirely disregarded the CWS finding that the

---

3    The Order stated the court considered "a history of significant physical abuse of [their daughter] by [Mother]."

14

suspected physical abuse of the parties' daughter by Mother was unsubstantiated.  Rather, absent an affirmative showing on the record, we conclude the court properly considered and weighed all the evidence presented to it, including the CWS finding, and made a contrary finding that Mother did, in fact, commit an act of physical abuse against their daughter.  Mother has not carried her burden on appeal to show the trial court abused its discretion by finding that it would be in the best interests of the parties' daughter for Father to have primary physical custody of her.[4]

## DISPOSITION

The order is affirmed.  The parties shall bear their own costs on appeal.

McDONALD, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.

---

[4]     To the extent Mother raised new arguments in her reply brief, we exercise our discretion and decline to address them.