Filed 5/4/16  P. v. Glover CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ARBRY FRANK GLOVER,<br><br>    Defendant and Appellant. | 2d Crim. No. B257085<br>(Super. Ct. No. TA128535-01)<br>(Los Angeles County) |

Arbry Frank Glover appeals a judgment following conviction of assault with a deadly weapon, with findings that he suffered two serious felony convictions and two felony strike convictions, and served six prior prison terms.  (Pen. Code, §§ 245, subd. (a)(1), 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).)[1]  We reverse the findings of the serious felony conviction and felony strike conviction based upon Glover's 1980 Tennessee rape conviction, reverse and remand for further sentencing proceedings, but otherwise affirm.

### *FACTUAL AND PROCEDURAL HISTORY*

Shortly after midnight on June 4, 2013, Kenneth Hermosillo was at the Artesia Transit Center in Los Angeles awaiting a bus ride.  As he ran to catch a bus, Hermosillo heard Glover say, "Hey, you. . . .  You heard me.  Come closer."  When Hermosillo approached Glover, who was in a wheelchair, Glover swung a knife at him

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

two or three times. Hermosillo jumped back so that the knife would not cut his hip or thigh. Hermosillo telephoned for police assistance and then walked away. He later explained that he approached Glover because he "was just trying to help somebody out who . . . was asking for help."

On June 6, 2013, Los Angeles County Sheriff's Detective Larry Savedra interviewed Glover. After advising Glover of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, 444-445, he admitted that he swung his knife at "a Mexican" who had approached him. Glover stated that the victim had not threatened or harassed him, but that people in general harass him.

Prior to trial, the court granted Glover's request to represent himself, pursuant to *Faretta v. California* (1975) 422 U.S. 806.[2] Glover represented himself throughout trial, with standby counsel present, until trial of the sentencing enhancements and sentencing. During the latter proceedings, appointed counsel represented Glover at Glover's request.

*Conviction and Sentencing*

The jury convicted Glover of assault with a deadly weapon. (§ 245, subd. (a)(1).) In a separate proceeding, the trial court found that Glover suffered two serious felony and strike convictions and served six prior prison terms. (§§ 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).) At sentencing, the court struck one of the two felony strike convictions as well as all six prior-prison-term findings. (§ 1385, subd. (a); *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.) The court then sentenced Glover to 18 years imprisonment; imposed a $300 restitution fine, a $300 parole revocation restitution fine (suspended), a $40 court security assessment, a $30 criminal conviction assessment; and awarded Glover 768 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

---

[2] Glover had represented himself in two prior jury trials regarding unrelated criminal charges.

2

Glover appeals and contends that the trial court erred by: 1) not conducting a *Marsden* inquiry (*People v. Marsden* (1970) 2 Cal.3d 118, 123-124); 2) permitting him to be handcuffed as he was brought into the courtroom, and 3) finding that his 1980 Tennessee conviction for rape is both a serious felony and a strike conviction pursuant to California law.

*DISCUSSION*

*I.*

Glover argues that he was denied the assistance of counsel pursuant to the Sixth Amendment of the United States Constitution and article I, section 15 of the California Constitution because the trial court did not conduct an inquiry pursuant to *People v. Marsden*, *supra*, 2 Cal.3d 118, 124 [abuse of discretion to deny a defendant who seeks substitution of attorney an opportunity to explain the reasons for his request]. He points out that he informed the court on several occasions that he was "forced to be pro. per." because he was not receiving "proper representation" from his court-appointed attorney. Glover asserts that his *Faretta* demand was only an expression of dissatisfaction with his appointed attorney, thereby requiring the court to conduct a *Marsden* hearing.

When a defendant requests substitute counsel, the trial court must provide him an opportunity to state grounds for his dissatisfaction with his current appointed attorney. (*People v. Sanchez* (2011) 53 Cal.4th 80, 90.) If the defendant makes a showing that his right to counsel has been substantially impaired, substitute counsel must be appointed as attorney of record for all purposes. (*Ibid.*) The trial court is obligated to conduct a hearing, however, only when there is "some clear indication" that defendant wants a substitute attorney. (*Id.* at pp. 89-90; *People v. Martinez* (2009) 47 Cal.4th 399, 418.)

A defendant's request to represent himself does not require the court to hold a *Marsden* hearing. (*People v. Crandell* (1988) 46 Cal.3d 833, 854-855.) "Nor is it the rule that whenever a defendant makes a motion to represent himself on the basis of

3

dissatisfaction with counsel, the court automatically should inquire whether he would like to make a motion for substitution of counsel." (*People v. Burton* (1989) 48 Cal.3d 843, 855 [*Marsden* and *Faretta* motions are fundamentally different; one concerns defendant's competency to waive his right to counsel, and the other raises the question of existing counsel's competency].)

The trial court did not err by not holding a *Marsden* hearing. Although Glover's statements implied dissatisfaction with appointed counsel, the statements were not a sufficiently "clear indication" warranting a *Marsden* inquiry. (*People v. Sanchez*, *supra*, 53 Cal.4th 80, 89-90.) During arraignment, the court explained the *Faretta* and *Marsden* motions to Glover, who was then represented by "stand-in counsel." The court recommended that Glover wait until his next court appearance to make the appropriate motion – to "run a *Marsden* motion, and depending what happens on that, [make] your request to be pro. per. again."

At the next court hearing, Glover's attorney informed the trial court that Glover intended to represent himself. Glover stated, "I want pro. per. then. I'm going to get it. I want pro. per." Shortly thereafter, Glover demanded a *Marsden* hearing. The trial judge questioned Glover whether he was seeking to represent himself or demanding a *Marsden* hearing. On four occasions, the judge asked Glover whether he wanted a *Marsden* hearing. Glover responded, "I just said I want[] my *Faretta* right. You keep asking me the same thing over and over."

Under these circumstances, the trial court was not required to conduct a *Marsden* hearing. The record reflects that the court repeatedly explained the differences between the *Faretta* and *Marsden* hearing and asked Glover which hearing he was requesting. Indeed, when counsel represented Glover during trial regarding the sentence-enhancement allegations, Glover requested a *Marsden* hearing. Glover was thus aware of the differences and able to make his wishes clear.

4

Glover contends that he was denied a fair trial, trial by an impartial jury, and equal protection of the law because he was brought into the courtroom each day by wheelchair in handcuffs.  He also complains that he was dressed in jail garb on the second day of trial.  Glover asserts that the errors deny his constitutional rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 16 of the California Constitution.

We reject Glover's contentions.  Visible restraints outside the courtroom are not inherently prejudicial.  (*Wharton v. Chappell* (9th Cir. 2014) 765 F.3d 953, 964.) "[A] due process violation occurs only if the criminal defendant demonstrates actual prejudice."  (*Ibid.* [citing decisions].)  Restraints during transportation do not affect the defendant's ability to assist during trial nor do they have any effect on the dignity of the courtroom.  (*Id.* at p. 965.)  "Prejudicial error does not occur simply because the defendant 'was seen in shackles for only a brief period either inside or outside the courtroom by one or more jurors or veniremen.'"  (*People v. Tuilaepa* (1992) 4 Cal.4th 569, 584.)  Our Supreme Court has long held that a defendant may be restrained in transit between the jail and the courtroom without a particularized showing of need. (*People v. Cunningham* (2015) 61 Cal.4th 609, 632.)

Glover also did not establish that a juror or jurors saw him in custody-identifying circumstances more than briefly.  (*People v. Rich* (1988) 45 Cal.3d 1036, 1085 ["even assuming the jurors at times briefly saw defendant being escorted in shackles and handcuffs to the courtroom or the restroom, defendant was not prejudiced thereby"].)  Glover did not request a hearing regarding the matter nor did he request the trial court to inquire if any juror saw him in handcuffs.  (*People v. Tuilaepa*, *supra*, 4 Cal.4th 569, 583 [failure to object to use of physical restraints and make a record below forfeits the claim on appeal].)

Moreover, the trial court did not compel Glover to wear jail garb.  On the second day of trial, he stated that he decided not to wear street clothing because he had

"been pulled out in handcuffs and rolled out in front of [jurors] everyday." Glover's clothing choices reflect his own decisions and not an order by the court. (*Estelle v. Williams* (1976) 425 U.S. 501, 512-513.) "[A]lthough the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." (*Ibid.*)

### III.

Glover argues that the trial court erred by finding that his 1980 Tennessee rape conviction is also a serious felony as well as a felony strike conviction pursuant to sections 667, subdivision (a), 667, subdivisions (b)-(i), and 1170.12, subdivisions (a)-(d). He relies upon *Descamps v. United States* (2013) - U.S. -, - [133 S.Ct. 2276, 2288] [serious Sixth Amendment concerns are implicated by a sentencing court's finding of a predicate offense that goes beyond merely identifying a prior conviction, e.g., what the jury in a prior trial must have accepted as the theory of the crime].)

Rape is an enumerated serious felony in California and a prior conviction for rape causes a mandatory five-year enhancement pursuant to section 667, subdivision (a) and a strike conviction pursuant to sections 667, subdivisions (b)–(i) and 1170.12, subdivisions (a)-(d).

In 1979, when Glover committed rape in Tennessee, the criminal statute punished rape committed 1) by force or coercion, 2) under circumstances where the actor knows or has reason to know the victim is mentally incapacitated or helpless, or 3) under circumstances where the actor accomplishes sexual penetration by fraud.[3] (Tenn. Code Ann., § 39-2-604.) Tennessee law further defines "fraud," as used in the rape statute, as including, but not limited to, "deceit, trickery, misrepresentation and subterfuge." (*Id.*, § 39-2-602.)

---

[3] We grant Glover's request to take judicial notice of portions of the record, including jury instructions and the jury verdict form, of his 1980 rape conviction in Tennessee.

During trial of Glover's prior conviction allegations, the prosecutor introduced evidence of the grand jury indictment in the Tennessee rape case and the trial jury's verdict form, among other documents. The 1979 grand jury indictment charged "aggravated rape," and stated that Glover sexually penetrated D.G. with force and coercion, while armed with a knife. At the rape trial, the court instructed regarding aggravated rape (involving force, coercion, weapon use, or infliction of personal injury), and rape (involving force, coercion or "sexual penetration by fraud"). The jury verdict form states that the jury convicted Glover of "rape," obviously a lesser offense to aggravated rape. In so doing, the jury may have rejected the weapon use allegation.

Pursuant to our Three Strikes law, a defendant's sentence may be enhanced upon proof that he has been previously convicted of a "strike" – a violent felony as defined in section 667.5, subdivision (c) or a serious felony as defined in section 1192.7, subdivision (c). (*People v. Denard* (2015) 242 Cal.App.4th 1012, 1024.) In order for a prior conviction from a foreign jurisdiction to qualify as a strike, it must involve the same conduct as would qualify as a strike in California. (*People v. Woodell* (1998) 17 Cal.4th 448, 453; *Denard,* at p. 1024.) The statutory elements of the foreign crime must include all the elements of the California strike offense. (*People v. Warner* (2006) 39 Cal.4th 548, 552-553.) If the foreign law can be violated in different ways, and the record does not disclose any of the facts of the offense actually committed, the court will presume that the prior conviction was for the least offense punishable under the foreign law. (*People v. Rodriguez* (1998) 17 Cal.4th 253, 262, superseded by statute on other grounds as stated by *People v. Luna* (2003) 113 Cal.App.4th 395, 397; *Denard*, at p. 1024.)

At the time Glover committed the present crime, June 4, 2013, California's rape statute did not punish sexual penetration committed by fraud, other than by a person pretending to be the victim's spouse or pretending that the sexual penetration served a professional purpose. (§ 261, subd. (a)(4)(D), (5).) Pursuant to the least adjudicated elements test, Glover's Tennessee rape conviction does not qualify as a

7

serious felony or felony strike conviction pursuant to California law as it existed on June 4, 2013.

At sentencing, the trial court indicated that it intended to sentence Glover as a second-strike defendant. Thus, we reverse the serious felony and felony strike allegations arising from the Tennessee rape conviction but remand for further sentencing proceedings. The judgment is otherwise affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

8

Drew E. Edwards, Judge

Superior Court County of Los Angeles

_____

Mary Jo Strnad, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.